UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at Pikeville)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 7: 15-022-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| ROBERT PORTER, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Defendant Robert Porter's motion for bond pending appeal.  [Record No. 194]  Because the motion does not present a substantial question that would warrant appellate relief, the motion will be denied.

## I.

Robert "Bob" Porter is the former mayor of Paintsville, Kentucky.  On February 25, 2016, a federal grand jury returned a superseding indictment charging him with three counts of theft concerning programs receiving federal funds, in violation of 18 U.S.C. § 666(a)(l)(A), and one count of bribery concerning programs receiving federal funds in violation of 18 U.S.C. § 666(a)(l)(B).  [Record No. 40]  Porter was found guilty on two counts under § 666(a)(1)(A), and guilty on the single count under § 666(a)(l)(B) following a four-day jury trial.  [Record No. 149]  Porter was later sentenced to a 48-month term of incarceration, followed by two years of supervised release.  [Record No. 181]  A $4,000 fine was imposed, together with the statutorily-required special assessment.  [*Id.*]  Porter did not address the Court during his

sentencing hearing and he did not ask this Court to consider releasing him during any subsequent appeal.

Porter filed a Notice of Appeal on January 19, 2017. [Record No. 187] He also moved, in the Court of Appeals, for bond pending his direct appeal. The United States Court of Appeals for the Sixth Circuit denied the motion, without prejudice, because Porter failed to seek bond first in this Court, as required by Federal Rule of Appellate Procedure 9(b). [Record No. 193] Porter proceeded to file his bond motion in this Court. That motion is now ripe.

## II.

Release pending appeal is governed by 18 U.S.C. § 3143. A person who has been found guilty and sentenced to a term of imprisonment, but has filed an appeal, must be detained unless the court makes two findings. First, the court must find, "by clear and convincing evidence[,] that the person is not likely to flee or pose a danger to the safety of any other person or the community if released[.]" § 3143(b)(1)(A). Second, the court must determine that "the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in-- (i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." § 3143(b)(1)(B).

The Sixth Circuit in *United States v. Pollard*, 778 F.2d 1177 (6th Cir. 1985), explained that "an appeal raises a substantial question when the appeal presents a 'close question or one that could go either way' and that the question 'is so integral to the merits of the conviction that it is more probable than not that reversal or a new trial will occur if the question is decided in the defendant's favor.'" 778 F.2d at 1182 (quoting *United States v. Powell*, 761 F.2d 1227, 1233–34 (8th Cir. 1985) (en banc)). "It is not sufficient to show simply that reasonable judges

-2-

could differ (presumably every judge who writes a dissenting opinion is still 'reasonable') or that the issue is fairly debatable or not frivolous." *Powell*, 761 F.2d at 1234. Further, harmless errors and "question[s] as to which the defendant had not sufficiently preserved his record" do not meet the substantial question standard. *Powell*, 761 F.2d at 1233 (citing *United States v. Miller*, 753 F.2d 19 (3d Cir. 1985)). Thus, to qualify for bond, Porter must raise questions integral to the merits of his conviction. Further, they must be close questions (more than non-frivolous or simply debatable), that if decided in his favor, would warrant reversal, a new trial, or a reduced sentence.

## III.

Porter raises three matters which he believes meet the substantial question standard. He first argues that the evidence supporting his conviction under 18 U.S.C. § 666(a)(1)(B) lacked the necessary "official act" and quid pro quo agreement. Second, he argues that the playing of a video deposition as substitute for the testimony of a live witness violated his rights under the Sixth Amendment's Confrontation Clause. Finally, Porter argues that the introduction of out-of-court statements made by a non-testifying witness violated the prohibition on hearsay evidence and also violated the Confrontation Clause. Each argument lacks merit.

### A.      Danger to the Community

Threshold questions for bond pending appeal are whether the movant is likely to flee if released, and whether the individual poses a danger to the safety of another person or the community. The Court must find by clear and convincing evidence that neither is true. The Court so finds.

-3-

The defendant does not pose a flight risk.  As Porter points out, he was not arrested or taken into custody either before trial or following his conviction.  He was released pre-trial without supervision, and complied with his bond conditions post-conviction.  Given his compliance with the conditions imposed on him in the past, his family ties, and his medical history, it is unlikely Porter will flee if released.  The government concedes that Porter does not pose a flight risk.

The government also concedes that Porter is not a danger to the community and nothing in the record suggests otherwise.  Porter has no documented history of violence, and there is no reason to believe that he poses physical danger to any person or to the community.  Accordingly, § 3143(b)(1)(A) is no barrier to Porter obtaining bond.  The motion turns on the merits of his appeal under § 3143(b)(1)(B).  Porter's three arguments under that subsection will be addressed in turn.

### B.       Official Act and Quid Pro Quo

The Supreme Court interpreted the phrase "official act" as contained in the federal bribery statute codified at 18 U.S.C. § 201 in *McDonnell v. United States*, 136 S. Ct. 2355 (2016).  Porter seeks to extend the holding of *McDonnell* to another federal bribery statute, 18 U.S.C. § 666(a)(1)(B), despite the absence of the phrase "official act" in the latter statute.  This argument does not pose a substantial question on appeal for three reasons.  First, this argument was not raised at trial or preserved for appeal.  Second, Sixth Circuit caselaw forecloses the argument.  Third, even if Porter's statutory argument is correct, the evidentiary basis for Porter's conviction comports with the holding in *McDonnell* such that no relief is warranted.

Under *United States v. Powell*,[1] questions not sufficiently preserved in the record are not "substantial questions" for purposes of seeking bond pending appeal.  761 F.2d at 1233 (citing *United States v. Miller*, 753 F.2d 19 (3d Cir. 1985)).  *McDonnell v. United States* was argued April 27, 2016, and the decision was issued June 27, 2016.  136 S.Ct. 2355.  Porter's trial commenced on September 21, 2016, and a jury instructions conference was held on September 26, 2016.  [Record Nos. 141, 143]  Despite the benefit of the *McDonnell* ruling, Porter did not seek an instruction based on its holding.[2]  Under Federal Rule of Criminal Procedure 30(d), failure to object to the jury instructions precludes appellate review, except for plain error under Rule 52(b).  *United States v. Newsom*, 452 F.3d 593, 605 (6th Cir. 2006).  Plain error review notwithstanding, the failure to raise this argument below precludes it as a basis for bond pending appeal.  *Powell*, 761 F.2d at 1231.

Apart from the waiver, Porter's argument is foreclosed by existing caselaw.  In *United States v. Abbey*, 560 F.3d 513 (6th Cir. 2009), the Sixth Circuit addressed a similar attempt to read "official act" and quid pro quo requirements into 18 U.S.C. § 666(a)(1)(B).  It rejected that argument as contrary to the text of the statute.  "By its terms, the statute does not require

---

[1]     As stated *supra*, the Eight Circuit's interpretation of 18 U.S.C. § 3143 in *Powell* was adopted by the Sixth Circuit in *United States v. Pollard*, 778 F.2d 1177, 1182 (6th Cir. 1985) ("After considering the legislative history of the Bail Reform Act of 1984, we adopt the further refinement that the Eighth Circuit, sitting en banc, espoused in *United States v. Powell*, [761 F.2d 1227 (8th Cir.1985)].")

[2]     To be sure, Porter's trial was originally scheduled to take place before *McDonnell* was decided.  In light of initial rescheduling, proposed jury instructions were submitted on June 14, 2016, prior to the pretrial conference.  Even so, nothing prevented Porter from proposing an "official act" instruction before *McDonnell* was decided, and nothing prevented Porter from proposing one between the time *McDonnell* was decided and when the instructions were finally given (on September 27, 2016).

the government to prove that [the defendant] contemplated a specific act when he received the bribe; the text says nothing of a quid pro quo requirement to sustain a conviction, express or otherwise[.]"  560 F.3d at 520.  Analyzing the Supreme Court's decision *United States v. Sun–Diamond Growers of California*, 526 U.S. 398 (1999), the *Abbey* court recognized that "neither § 666 nor the Hobbs Act contains the 'official act' language that the *Sun–Diamond* Court found 'pregnant with the requirement that some particular official act be identified and proved.'" *Abbey*, 560 F.3d at 521.  While *McDonnell* narrowed the definition of "official act" under *Sun–Diamond*, it did nothing to extend the application of *Sun-Diamond* beyond 18 U.S.C. § 201.  And though *Abbey* referred to the Hobbs Act which was at issue in *McDonnell*, the parties in *McDonnell* "defined honest services fraud and Hobbs Act extortion with reference to § 201 of the federal bribery statute."  *McDonnell*, 136 S.Ct. at 2375.  Therefore, *Abbey*'s interpretation of § 666(a)(1)(B) remains good law.

Porter cites *United States v. Terry*, 707 F.3d 607 (6th Cir. 2013), for the proposition that that 18 U.S.C. § 666(a)(1)(B) requires an official act.  On the contrary, *Terry* merely notes a similarity between the definitions of bribery contained in § 201(b)(2)—which includes an "official act"—and § 666(a)(1)(B)—which does not.  *Id.* at 612.  Of course, characterizing two things as *similar* implies *differences*.

Lastly, even assuming an "official act" and quid pro quo are required, the proof at trial established both.  The Supreme Court in *McDonnell* narrowed the category of acts that are "official acts" and, therefore, unlawful when done in exchange for gratuities.  Because the evidence presented at trial included acts that were outside the narrower definition, the Court found that the jury could have convicted McDonnell for conduct that is not unlawful.  *See McDonnell*, 136 S.Ct. at 2375.  The Court could not conclude that the failure to provide the

jury with a narrow "official acts" instruction was "harmless beyond a reasonable doubt," and so the case was remanded. *Id.* Here, however, the evidence at trial includes only "official acts" as defined in *McDonnell*. Porter's actions presented in the government's case-in-chief fall within the *McDonnell's* definition, and any error that may exists for failing to provide that definition to the jury would not constitute plain error.

> Under *McDonnell*,
>
> [t]o qualify as an "official act," the public official must make a decision or take an action on that "question, matter, cause, suit, proceeding or controversy," or agree to do so. That decision or action may include using his official position to *exert pressure on another official* to perform an "official act," or to advise another official, knowing or intending that such advice will form the basis for an "official act" by another official.

136 S.Ct. at 2371–72 (emphasis added). The government's theory at trial is that Porter used his power and influence as mayor to steer business and contracts to companies owned by Eulas Crace, as well as to ensure payment of a fraudulent invoice to Crace's company. In return, Porter received cash payments disguised as loans.

Specifically, the evidence presented at trial shows that Porter directed the police department to use Crace Wrecker Service as the preferred towing service, that Porter steered city business to Crace's construction company in violation of mandatory bidding requirements, and that Porter pressured city council member to approve payment of a storage bill (going so far as to withhold the bill itself from council members).[3] Payments characterized as "loans"

---

[3]     Payment of invoices for Paintsville's expenses is the city council's responsibility. However, council members were not routinely presented with the invoices themselves, but with a "packet" which gave summaries of the expenses. Evidence presented at trial shows that Porter used his position as mayor to withhold the substance of invoices to the city council members. When a council member requested a copy of the storage invoice, Porter informed him that he would need to file an open records request to obtain it.

to Porter's wife constituted the *quid*.  Porter's steering of contracts to the Craces and pressuring others to pay false invoices constituted the *quo*.  Given the nature and weight of the evidence supporting the government's theory, it is unlikely that any asserted error in instructing the jury on "official acts" affected the outcome at trial.  *See, e.g., United States v. Halloran*, 664 F. App'x 23, 28-29 (2d Cir. 2016), *cert. denied sub nom. Tabone v. United States* (U.S. Mar. 20, 2017) (Finding no plain error where jury instructions "failed to define specifically for the jury the contours of an 'official act.'").

### C.     Deposition of Laura "Jackie" Miller

Porter claims that the government improperly presented deposition testimony of a critical witness, Laura "Jackie" Miller, over defense objection and in violation of Porter's rights under the Confrontation Clause of the Sixth Amendment.  [Record No. 194 at 13]  "[T]he Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 68 (2004).  Both elements were met.  Therefore, this is not a substantial question warranting bond.

In response to a government motion [Record No. 128], and over the defendant's objection [Record No. 135], the Court permitted Miller's deposition to be taken protectively prior to trial.  [Record No. 137]  The government provided documentation outlining Miller's serious health conditions and expected treatment.  [Record No. 132]  The Court found, in accordance with Rule 15(a)(1), that "[b]ecause exceptional circumstances make it unlikely Ms. Miller will be available to testify during trial, it is in the interest of justice to allow her deposition be taken before trial and presented during that proceeding if, in fact, she is unable to testify due to her very serious medical condition." [Record No. 137 at 2]  On September 6, 2016, Miller's deposition was taken at the Johnson County Hall of Justice in Paintsville, KY.

-8-

Defendant Porter was present at the deposition, along with his attorney.  During the course of the proceedings, a cross-examination was conducted, and numerous objections were noted for the record.

Fed. R. Crim. Pro. 15, subsection (f), entitled "Admissibility and Use as Evidence," provides that "[a]n order authorizing a deposition to be taken under this rule does not determine its admissibility."  To that end, two days before trial, counsel for the government provided to the Court and to defense counsel updated documentation from Miller's treating physician.  In a letter dated September 19, 2016, Miller's doctor described Miller's physical condition following a recent surgery, describing her condition as such that intended future surgery required delay.  The physician noted that Miller was "quite debilitated," which "will continue for an extended period of time (months to a year)," that Miller was confined to her bed and unable to travel outside of her home.  Miller's treating physician concluded that it would be unsafe for Miller to attempt to appear in Court.

Despite the government's proffer of medical documentation concerning Miller's unavailability, the defendant made no argument to the contrary.  The defendant never argued that Miller was available as a witness for Sixth Amendment purposes, or that the government did not make a diligent attempt to secure her presence at trial.  Specifically, on the morning of trial, a preliminary discussion was held, on the record, concerning the objections contained within the video deposition.  During that discussion, the defendant did not contravene that Miller was unavailable.  Later in the day, when the government sought to present the video deposition, counsel informed the Court that they had agreed to waive all the objections raised within the deposition.  At that point, again, the defendant did not object to the presentation of the video.  Given Miller's medical condition, any objection was futile.

In light of the foregoing, presentation of the video deposition fully conformed with the Federal Rules of Evidence, specifically Rule 804(b)(1), and did not run afoul of the Sixth Amendment. As required by *Crawford*, Miller was unavailable to testify, *see, e.g., United States v. McGowan*, 590 F.3d 446, 455 (7th Cir. 2009) (finding witness unavailable for Sixth Amendment purposes where medical condition was both severe and chronic), and her testimony was previously cross-examined by the defendant. Porter's argument to the contrary does not raise a substantial question for bond pending appeal.

### D.       Admission of Statements Recorded on FBI Form 302

Lastly, Porter takes issue with the introduction of statements made to an FBI Task Force Officer and memorialized on an FBI Form 302. Porter argues that there was insufficient evidence to prove that the statements were false, that the statements did not properly fall within an exception to the hearsay rule, and that the statements, therefore, were inadmissible. These arguments misstate the law and the evidence. The Court's evidentiary ruling was limited to statements being offered for purposes other than the truth of the matter asserted. Statements offered for purposes other than the truth of the matter asserted are not hearsay, and do not require cross-examination. Because the Court did not err in permitting non-hearsay statements to be admitted into evidence, this is not a substantial question warranting bond.

On the second day of trial, the Court was advised that Chet Crace, the son of Porter's co-defendant Eulas Crace, would be invoking his Fifth Amendment right against self-incrimination. Outside the presence of the jury, Chet Crace was called to the stand. Upon questioning by the government, Crace invoked his Fifth Amendment rights. Crace proceeded to state his intention to invoke the Fifth Amendment in response to any question asked involving his family's business. In light of this development, the parties were advised to

-10-

prepare overnight to address the matter, including whether immunity would be sought to compel Chet Crace's testimony.

On the morning of the third day of trial, the government stated its intention to recall the case agent, Detective Atkins, and question him regarding statements made by Chet Crace during an interview. Crace's statements had been recorded on an FBI Form 302. Under the government's theory, Crace's statements regarding storage invoices and checks paid to Bonnie Porter were false exculpatory statements. Because the out-of-court statements were not being offered for the truth of the matter asserted, but rather to show their *falsity*, they were not hearsay.

The basis for the Court's evidentiary ruling is well-established. In *United States v. Hathaway*, 798 F.2d 902, 905 (6th Cir. 1986), the Sixth Circuit explained that,

> [w]hen statements are offered to prove the falsity of the matter asserted, there is no need to assess the credibility of the declarant. Since there is no need to assess the credibility of the declarant of a false statement, we know of no purpose which would be served by extending the definition of hearsay to cover statements offered for the falsity of the matter asserted.

This proposition was reaffirmed in the Supreme Court's seminal decision *Crawford v. Washington*, 541 U.S. 36 (2004). The *Crawford* Court noted that "[t]he [Confrontation] Clause [] does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." 541 U.S. at 59 n.9 (citing *Tennessee v. Street,* 471 U.S. 409, 414 (1985)). The Supreme Court again reaffirmed the proposition in *Williams v. Illinois*, 132 S.Ct. 2221, 2228 (2012) (plurality opinion) ("[I]t is settled that the Confrontation Clause does not bar the admission of such statements."). And the Sixth Circuit continues to apply *Hathaway* post-*Crawford. See, e.g., United States v. Thompson*, 501 F. App'x 347, 363 (6th Cir. 2012).

-11-

The circumstance presented by this case is not unique.  In *United States v. Yielding*, 657 F.3d 688 (8th Cir. 2011), the Eighth Circuit recognized that "[s]tatements are not hearsay when the point of the prosecutor's introducing those statements [is] simply to prove that the statements were made[,] so as to establish a foundation for later showing, through other admissible evidence, that they were false." 657 F.3d at 700 (quoting *Anderson v. United States,* 417 U.S. 211, 219–20 (1974)) (quotation marks omitted).  Prosecutors in *Yielding* introduced statements made by the defendant's wife to the FBI in which she characterized as "loans" what were in fact kickback payments.  *Id.*  The wife's statements were not introduced for their truth, but rather to show her use of a false cover story.  *Id.*  This use of the statements was found to be proper under the Confrontation Clause.  As in *Yielding*, the government here introduced for their falsity Chet Crace's statements that a storage invoice was authentic, and that payments made to Bonnie Porter were in fact loans.  Other evidence produced by the government showed that these statements were cover stories.

Porter argues otherwise.  He claims that "[a]nalysis of the facts underlying the charged offenses in the present case reveals that [Crace's] statements contained in the FBI 302 were not false."  [Record No. 194 at 18]  Porter contends that there was insufficient evidence in the record to permit a finding that the statements were false.  [*Id.*]  No matter.  If the statements were true, they would bolster Porter's defense.  The government offered other evidence to prove the falsity of Crace's statements, and Porter was able to offer other evidence to establish the truthfulness of Crace's statements.  Further, if the defendant wished to contravene Detective Atkins' recollection of Crace's statements, Atkins was available for cross-examination.

-12-

Finally, the government acknowledges that it went beyond the scope of the Court's ruling and inquired into Crace's statements acknowledging that the "loans" were never repaid. However, the defendant did not object to this line of questioning. And because it went beyond the scope of the Court's earlier ruling, no objection was preserved. When a defendant fails to object, plain error review applies. *United States v. Cowart*, 90 F.3d 154, 157 (6th Cir. 1996).

Prevailing under plain error review requires "exceptional circumstances" where "the error is so plain that the trial judge and prosecutor were derelict in countenancing it." *United States v. Slone,* 833 F.2d 595, 598 (6th Cir. 1987). Specifically, the defendant must show "(1) error (2) that 'was obvious or clear,' (3) that 'affected defendant's substantial rights' and (4) that 'affected the fairness, integrity, or public reputation of the judicial proceedings.'" *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008). Porter can make no such showing. The failure to repay the purported loans was implicit from the other evidence presented at trial. And Crace's hearsay statements compounding that point in no way affected the fairness, integrity, or public reputation of the judicial proceedings. This is not a substantial question for bond pending appeal.

## IV.

The government concedes and the Court acknowledges that Porter does not present a flight risk, nor does he pose a physical threat to the community. There is also no indication that Porter's appeal is taken for the purpose of delay. However, Porter's motion does not present a substantial question that, if decided in his favor, would entitle him to appellate relief. Accordingly, it is hereby

**ORDERED** that the defendant's motion for bond pending appeal [Record No. 194] is **DENIED**.

-13-

This 22nd day of March, 2017.

Signed By:

*__Danny C. Reeves__*  DCR

**United States District Judge**